*AXE Properties & Management, LLC v. Leonard Merriman, IV*
No. 1627, Sept. Term. 2022
Opinion by Leahy, J.

**Implied and Constructive Contracts > Nature and Grounds of Obligation > Effect of Express Contract > In general**

While a plaintiff may *allege* causes of action for breach of contract and unjust enrichment concurrently "when there is evidence of fraud or bad faith," *County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000) (footnote omitted), a plaintiff may not ultimately *recover* under both for any claim covered under the contract.

**Judgment > Amendment, Correction, and Review in Same Court > Form and requisites of application in general**

Even though a motion for judgment notwithstanding the verdict ("JNOV") is not typically the appropriate motion to address election of remedies, Appellant's initial and renewed JNOV motions were sufficient to invoke the revisory power of the court under Maryland Rule 2-535 where Appellant's motions for JNOV raised the issue of double recovery as between Appellee's breach of contract and unjust enrichment claims. *See S. Mgmt. Corp. v. Taha*, 378 Md. 461, 493-95 (2003); *Allstate Ins. Co. v. Miller*, 315 Md. 182, 189 (1989).

**Election of Remedies > Necessity and time for election**

Where judgment was entered on inconsistent remedies under plaintiff's claims for breach of contract and unjust enrichment, remand was not necessary to allow the plaintiff to elect which claim to recover under because the plaintiff's post-trial conduct in filing a motion for attorneys' fees under the contract sufficiently evidenced an election *not* to rescind the contract, and thus to recover under the breach of contract claim.

**Damages > Grounds and Subjects of Compensatory Damages > Direct or Remote, Contingent, or Prospective Consequences or Losses > In General > Nature and theory of compensation**

Jury's compensatory damages awards for both breach of contract and negligent misrepresentation, conferred an impermissible double recovery on the plaintiff where the claims concerned identical injuries that did not "arise[] from separate, unique transactions[,]" and thus the claims were not "separate claims for purposes of separate compensatory damage awards" under *Beall v. Holloway-Johnson*, 446 Md. 48, 71 (2016).

**Appeal and Error > Presentation and Reservation in Lower Court of Grounds of Review > Issues and Questions in Lower Court**

Defendant failed to preserve, for appeal, an objection under the one recovery rule, *see Beall v. Holloway-Johnson*, 446 Md. 48, 70-71 (2016), where defendant did not raise the issue until the instant appeal. Md. Rule 8-131(a). Thus, although the jury's combined awards for breach of contract and negligent misrepresentation conferred a double recovery on the plaintiff, the Appellate Court of Maryland did not disturb the award.

Circuit Court for Prince George's County

Case No. CAL17-03910

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1627

September Term, 2022

AXE PROPERTIES & MANAGEMENT, LLC

v.

LEONARD MERRIMAN, IV

Berger,
Leahy,
Wright, Alexander, Jr.
   (Senior Judge, Specially Assigned),

JJ.

Opinion by Leahy, J.

Filed: March 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The issues presented in this appeal concenter on whether a jury may award damages for breach of contract, unjust enrichment, and negligent misrepresentation on the same claims arising out of the November 2015 sale of a single-family home in Capitol Heights, Maryland, to Leonard Merriman, IV ("Merriman") by AXE Properties, LLC ("AXE").

On remand for a new trial ordered in *Merriman v. AXE Props. & Mgmt., LLC*, No. 848, Sept. Term 2018, slip op. at 1-2 (filed July 28, 2020) (*Merriman I*), a Prince George's County jury determined that AXE failed to disclose latent defects that existed in the home prior to the sale. The jury awarded Merriman $70,000 for breach of contract; $200,000 for unjust enrichment; and $130,000 for negligent misrepresentation. AXE filed two motions for judgment notwithstanding the verdict ("JNOV"), which were denied.

AXE presents two issues for our review. First, AXE complains, as it did before the trial court, that a plaintiff may not simultaneously recover under claims for breach of contract and unjust enrichment, even if the fraud or bad faith exception of *County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83 (2000) (hereinafter "*Dashiell*"), is applicable. Issue one, therefore, is whether the circuit court erred by sustaining the jury's unjust enrichment award under the fraud or bad faith exception adopted in *Dashiell*, where Merriman also recovered damages for breach under an express contract defining the rights and remedies of the parties.[1] We hold that although a plaintiff may *allege* causes of action for breach of contract and unjust enrichment

_____

[1] AXE frames the first issue presented for our review as follows:

"I. Did the Circuit Court err by sustaining the jury's unjust enrichment award, where [Merriman] also recovered breach of contract damages?"

concurrently when there is evidence of fraud or bad faith, *Dashiell*, 358 Md. at 100, a plaintiff may not *recover* under both for any claim covered by the contract.

Axe frames the second issue in its brief as: "Did the Circuit Court err by sustaining the jury's $200,000 compensatory damage award, when [Merriman] only presented evidence of [$132,925][2] in damages?" AXE asserts that, under *Beall v. Holloway-Johnson*, 446 Md. 48, 70-71 (2016), Merriman's claims for breach of contract and negligent misrepresentation are not eligible for separate compensatory damage awards; therefore, because the combined $200,000 award ($70,000 for breach of contract, and $130,000 for negligent misrepresentation) exceeds the evidence of damages that was presented at trial, we should exercise our authority under Maryland Rule 8-604(a)(4) to modify the judgment and reduce the award to $132,925. We hold that AXE failed to preserve any argument that, under *Beall*, the jury's remaining $200,000 combined compensatory award ($70,000 for breach of contract and $130,000 for negligent misrepresentation) represents an impermissible double recovery; therefore, we will not disturb that award.

## BACKGROUND

### Underlying Dispute

The basic facts of the case, as we previously summarized in our unreported opinion, are as follows:

> AXE Properties & Management, solely owned by Weichin "Eric" Wang, is a limited liability corporation in the business of buying improved real estate, foreclosed or otherwise, renovating and reselling them. In the parlance of the day, AXE is a "property flipper." In late July 2015, AXE

---

[2] AXE incorrectly names "$132,955" as the sum indicated by the evidence. AXE acknowledges elsewhere, and the record supports, that the sum was $132,925.

purchased the "[d]istressed" property, 4925 Gunther Street, in a foreclosure sale from the foreclosing bank and renovated it for resale. Merriman, a first-time homebuyer in Maryland, purchased the renovated property from AXE in November 2015. In the contract documents, Wang, as the principal of AXE, executed a disclaimer and conveyed the property "as is." Shortly before moving into the home in February 2016, Merriman and his wife, Jeanine Young Merriman, noticed several instances of water intrusion into the basement which, Merriman aver[red], was, or should have been, apparent to AXE, but had not been disclosed prior to the sale. That condition continued even after they had moved into the home.

In the months that followed, Merriman and his wife experienced several additional problems with the house, including faulty electrical wiring and a roof leak that appeared to be related to the removal of a load-bearing wall. To assess the full extent of the defects, Merriman retained architect Kevin J. Driscoll, A.I.A., who, in September 2016, performed a code compliance inspection of the property. Driscoll's report noted 20 various defects throughout the interior and exterior of the property, including code compliance failures. Thus Merriman assert[ed], there were latent defects of which AXE ought to have known that required disclosure.

*Merriman I*, slip op. at 1-2 (footnotes omitted, second and third alterations added).

Thus aggrieved, in February 2017 Merriman filed a complaint in the Circuit Court for Prince George's County. The complaint charged that undisclosed latent defects existed in the property he purchased from AXE and Merriman asserted claims for breach of contract, fraudulent inducement/deceit, fraud/concealment, negligent misrepresentation, unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act, rescission, and unjust enrichment.

A jury trial commenced on May 7, 2018. The case never reached the jury, however, because the court granted AXE's motion for judgment on all counts at the conclusion of Merriman's case-in-chief. *Merriman I*, slip op. at 3. In its motion for judgment, AXE argued that the alleged defects were "visible and apparent" and, thus, that any defects were

not *latent*[3] defects. *Id.*, slip op. at 5. The court agreed with AXE and, in its oral ruling on the motion, found, among other things, that there was "nothing hidden" and that "[t]he things that were wrong with [the house] appeared to be visible[.]" *Id.*, slip op. at 6-7.

On appeal, Merriman argued that the trial court erred in granting AXE's motion for judgment, and we conducted a *de novo* review of the evidence presented at trial to determine whether, "in the light most favorable" to Merriman, there was "any evidence, no matter how slight, legally sufficient to generate a jury question" on the complaint's central allegation that the water seepage constituted a latent defect that was known, or should have been known, to AXE and its agents at the time they renovated the house. *Id.*, slip op. at 4, 9-10 (quotations omitted). After summarizing the testimony of each of the four witnesses that Merriman called in his case-in-chief, we found "from an essentially uncontested record that there were defects present" and that it was possible that "certain" of those defects, including the "presence of water seepage into the basement . . . were made to be latent by the efforts of the renovating contractors, thereby imputing knowledge to AXE." *Id.*, slip op. at 10-13. Accordingly, we held that "[w]hether the evidence . . . was sufficient to charge AXE with knowledge of latent defects in violation of laws requiring disclosure or

---

[3] The term "latent defect" is defined in the Real Property Article of the Maryland Code as:

> [M]aterial defects in real property or an improvement to real property that:
>> (1) A purchaser would not reasonably be expected to ascertain or observe by a careful visual inspection of the real property; and
>> (2) Would pose a direct threat to the health or safety of:
>>> (i) The purchaser; or
>>> (ii) An occupant of the real property, including a tenant or invitee of the purchaser.

Maryland Code (1974, 2023 Repl. Vol.), Real Property Article ("RP"), § 10-702(a).

in violation of the parties' contract of sale [was] a question of fact to be decided by a trier of fact." *Id.*, slip op. at 13 (citation omitted). To effectuate that holding, we vacated the judgment of the circuit court and remanded the matter for a new trial. *Id.*, slip op. at 13.

In July 2021 Merriman filed an amended complaint that made new and more specific factual allegations[4] and asserted an increased estimated cost to repair the property and place it in the condition that, in Merriman's view, it should have been in at the time of sale.[5] The amended complaint also added a claim for "pierc[ing] the corporate veil" and a claim for "attorneys' fees per contract – [Maryland] Rule 2-705[,]" but the court granted AXE's motion to strike these new claims. (Emphasis removed).

### Trial Summary

The parties convened to pick a jury on October 27, 2021, and trial commenced on October 28. During his case-in-chief, Merriman called five witnesses and played portions of the recorded deposition of the listing agent, Charles Nucciarone.[6] Because, in this

---

[4] Merriman newly asserted that AXE failed to obtain any "permits for electrical and plumbing work" during its renovation of the property, and that the "only permit issued" was a "heavy – up" permit to connect the property to the power grid. Additionally, Merriman detailed work conducted by his electrician to address "electrical trouble stemming from overloaded circuits[,]" and how the electrician discovered a "hidden" window that had been "covered over by drywall during Axe's 'renovation[.]'" The amended complaint attached pictures that allegedly showed damage to the property, including water damage, and the "overall vandalized condition" of the property at the time that AXE purchased the property at the foreclosure sale.

[5] The amended complaint estimated it would cost "at least $150,000.00 to repair the Property and place it in the condition it should have been in at the time of sale[,]" whereas the initial complaint asserted that this would cost "approximately $106,000.00[.]"

[6] The recorded deposition testimony of Charles Nucciarone does not appear in the record, and neither party to this appeal has indicated that his testimony is pertinent to the issues presented in this case.

appeal, AXE does not contest liability—but merely Merriman's ability to recover the awarded damages—our summary of the factual record is focused on the evidence pertinent to the damages issues presented.

Merriman testified that in October 2015 he entered into a contract to purchase the home from AXE for $255,000. The parties closed on the home in November, and Merriman moved into the home in February 2016. Merriman quickly began to experience problems, however, before moving in. For example, Merriman installed a washing machine in the home's basement, but when the dolly carrying the machine rolled over the basement's carpet, water began to "bubble[]" up. To remedy that issue, Merriman installed a new sump pump and purchased a wet vac to remove the water. After Merriman moved into the home, "within a week" it rained, and Merriman discovered "more water infiltration" in the basement. Thereafter, he continued to discover water seeping into the basement approximately once every six weeks. Merriman enlisted the help of various professionals to attempt to diagnose and remedy the home's issues. These professionals discovered additional problems, including defects in the wiring, water that pooled on a portion of the roof, and an exterior facing window that was concealed behind drywall and not visible from the outside.

On cross-examination, Merriman acknowledged that he had purchased the home "as is" and that he "did an inspection" that did not turn up the issues that, in the instant suit, he complained of. Merriman maintained that, in purchasing the home, he "trusted the contract process" and "assume[d] that Mr. Wang would have been truthful with disclosing latent issues on the house that he knew about[,]" including, among other issues, defects related

6

to water infiltration, the hidden window, and missing permits for the home's gas and electricity. Merriman pointed out that during the home inspection he conducted before purchasing the home, the "inspector c[ouldn't] go through the walls . . . to check" for water seepage issues.

After Merriman presented the recorded deposition testimony of Charles Nucciarone, he called Walter Carbajal, a contractor hired by AXE who gave brief testimony about his work to help renovate the home. Next, the jury heard the testimony of Kevin Driscoll, an expert in forensic architecture hired by Merriman. In the course of his testimony, Driscoll testified to a litany of problems in the home, including, among other things, "water in the basement[,]" an issue with a "load-bearing wall[,]" "ceiling height issue[s] in the basement[,]" electrical work and insulation that was not installed properly, and an exterior facing window that had been completely subsumed by a wall so that it was not visible from either the inside or outside. Each time Driscoll visited the home he "discovered more" problems and, in his opinion, the work to renovate the home's basement "had been done without a permit" or "inspections" and "may or may not actually meet the code." Ultimately, Driscoll testified that it would cost $126,500 to "restore th[e] property[.]"

Merriman then called Eric Wang, the sole owner of AXE. Wang testified generally to his work buying, renovating, and re-selling homes for a profit. In this case, Wang acknowledged that he owned the home for just two months before he sold the property to Merriman to make "about $50,000 [in] profit[.]"

Merriman's final witness was his spouse, Jeanine Merriman. Jeanine[7] stated that, after she and Merriman discovered water issues in the home's basement, she obtained estimates from two companies that do waterproofing; however, she did not testify to the amount of those estimates. To address the water that was pooling on the roof—ultimately causing leaks inside the home—and certain other moisture-related issues, Jeanine and Merriman paid "a contractor, PG Builders," a total of $6,425.

At the close of Merriman's case, AXE moved for judgment under Maryland Rule 2-519, and argued that the trial judge should enter a directed verdict in its favor on all counts. AXE argued that Merriman failed to establish that it actually knew of the home's various defects at the time of the sale, or that those defects qualified as *latent* defects that should have been disclosed to Merriman. Counsel for AXE also addressed Merriman's concurrent claims for damages under the contract of sale for the home, on the one hand, and unjust enrichment on the other:

> And with regard to re[scission] and unjust enrichment rescission and alternative remedy, [Merriman] is obviously now seeking for money damages rather than rescission. So, you know, unfortunately I don't think they could have both. You know, one is, "we're seeking damages." That's— on top of that, "we're seeking re[s]cission with respect to unjust enrichment[.]" There is a written contract. So unjust enrichment is improper.

Merriman opposed the motion, arguing that sufficient evidence existed to put the case to the jury. In response to Axe's argument that unjust enrichment was improper, Merriman's counsel stated: "I believe that the re[s]cission is an alternative remedy that I

---

[7] We refer to Jeanine Merriman by her first name to avoid confusion because she shares Merriman's last name. In so doing, we mean no disrespect.

8

will withdraw because it is a money damages [sic]."[8]  The court denied AXE's motion for judgment.

AXE proceeded to call three witnesses, beginning with Claire Alatan, an agent of AXE who represented AXE in its acquisition of the home and, subsequently, the sale of the home to Merriman.  Alatan testified that she visited the home before AXE purchased it and that, in her recollection, there was no "water on the property" or "signs of vandalization[,]" and nobody warned her of any latent defects on the property.  She also testified to her involvement in the listing of the property and the sale to Merriman, her general practice of advising clients that they must disclose any actual knowledge of latent defects that exist on properties being sold, and that she did in fact advise Wang of his obligation to disclose latent defects in this case.

Next, AXE called Wang, the sole owner of AXE, back to the stand.  Wang testified generally about his work as a renovator of distressed properties and the renovations and related work that his company completed in this case.  According to Wang, no one told him about any issues related to water infiltration or other latent defects in the home, and he did not have the opportunity to conduct a "final walk-through" of the home after the renovations were complete because he was overseas.  He stated that, when the home was sold to Merriman, he chose not to "make a disclaimer" about the condition of the home

---

[8] Merriman's counsel did not clarify, at this stage, why he elected to withdraw the count for rescission without also withdrawing the count for unjust enrichment; however in response to AXE's motion for judgment at the close of all evidence, Merriman claimed that a plaintiff may simultaneously recover under claims of breach of contract and unjust enrichment where there is evidence of fraud.

because he "d[idn't] live there" and thus he "d[idn't] know the condition." Wang said that he never spoke to Merriman directly, and that all negotiations were through Wang's agent.

Finally, AXE called Michael Luber, who was admitted as an expert in the home inspection field. Luber testified to what he observed during a visit to the home in August 2021. According to Luber, he saw signs of prior water infiltration "[n]ot inside the walls, but on the floor" of the basement. Luber "assum[ed]" that water stains on the basement's carpet stemmed from water that "came from under the door at the basement level . . . or that came up through the floor, through the foundation, or . . . a possible spill." In any case, Luber did not "notice any mold" anywhere in the house. Among other things, Luber also testified that a "little window" in the basement was "closed in from the outside" but that, in his opinion, this did not violate any applicable codes. On cross-examination, Merriman's counsel challenged Luber's ability to identify violations of applicable codes when inspecting a property because, as Luber acknowledged, he did not know "the building code name or title that applies to residences in Prince George's County" because he "only look[s] at national code." Notably, none of AXE's witnesses testified to what it would have cost to remedy the defects.

At the close of evidence, AXE's counsel stated that he "would like to renew [the] motion for directed judgment again and also add an additional argument[.]" In addition to earlier argument that AXE's counsel incorporated by reference, counsel asserted:

> [Merriman's] argument is way too speculative. The only damages that ha[ve] been shown are with respect to the roof and some flashing that was done to the roof. And there is no evidence that my client did any work on the roof. And that's the only damages that have been shown. What Mr. Driscoll had testified to . . . was that he based his damages on construction

cost per square feet and multiplied by square footage of the property. And that is speculative. There is no breakdown of the number. There is no—any reasonable allocation of the damages as to which aspect or this item or that item, is just a blank $126,000 that was proffered. And he did indicate that he did make some calculation or he did make some analysis based on his experience, but there the evidence is not before us. The only evidence we have is that the damages is based on his experience doing construction, that he calculated per square foot relative to the size of the property.[9]

Merriman's counsel "renew[ed his] opposition to the motion for judgment for all of the reasons articulated earlier" and disagreed that the evidence of damages was "speculative[.]" The trial judge denied the motion and indicated that the evidence of damages was not unduly speculative because Merriman's expert, Driscoll, "did testify that he's familiar with the area[,]" although he "wasn't very specific in terms of this particular property, which is kind of a generalization, but, counsel, that is something you['re] going to have to argue to the jury[.]" The judge also found that "with respect to the issues that were argued [in the earlier motion for judgment] after [Merriman's] case, again I do find that there has been some evidence generated to the extent that a jury . . . could find that there was some fraud, call it whatever you want, misrepresentation, things of that nature. So for those reasons I'm going to deny the motion."

The jury returned a verdict in favor of Merriman as follows:

**I. Count 1: Breach of Contract**

    1. Do you find [AXE] breached a duty to disclose known problems with the property to [Merriman]?

---

[9] On appeal to this Court, AXE does not assert that Merriman's proof of damages was impermissibly speculative. Indeed, AXE asserts that the trial court "erred in sustaining the jury's $200,000 combined compensatory award" for breach of contract and negligent misrepresentation "and $200,000 unjust enrichment award[,]" because "[Merriman] presented evidence of only $132,925 in damages." Thus, Appellant has waived this issue.

Yes __X__        No _____

*If your answer is "no", proceed to the next section at Question Number II.1.*
*If your answer is "yes", proceed to the next question, Question Number I.2.*

2. Did [Merriman] suffer actual damages as a result of [AXE's] failure to disclose what it knew about the conditions of the property?

Yes __X__        No _____

*If your answer is "no", proceed to the next section at Question Number II.1.*
*If your answer is "yes", proceed to the next question, Question Number I.3.*

3. What amount would fairly compensate [Merriman's] actual damages?

$ __70,000__

*Please proceed to the next section at Question II.1.*

## II. Count II: Fraudulent Inducement/ Deceit

1. Do you find that [AXE] made false representations or omissions of material fact to [Merriman] by providing statements about the property that were materially false?

Yes __X__        No _____

*If your answer is "no", proceed to the next section at Question Number III.1.*
*If your answer is "yes", proceed to the next question, Question Number II.2.*

2. Do you find that [Merriman] suffered a compensable injury as a result of the misrepresentation?

Yes _____        No __X__

*If your answer is "no", proceed to the next section at Question Number III.1.*
*If your answer is "yes", proceed to the next question, Question Number II.6. [sic]*

12

3. What amount would fairly compensate [Merriman]?

   $ __0.00__

4. What amount of punitive damages do you award?

   $ __0.00__

*Please proceed to the next <u>section</u> at Question III.1.*

## III. Count III: Fraud/ Concealment

1. Do you find that [AXE] made a false representation to [Merriman] concerning material defects, including latent defects, affecting the physical condition of the property such as water infiltration, or that areas of the house were not code compliant, or suitable for habitation?

   Yes __X__        No _____

   *If your answer is "no", proceed to the next <u>section</u> at Question Number IV.1.*
   *If your answer is "yes", proceed to the next question, Question Number III.2.*

2. Do you find that the falsity of the representation was either known to [AXE] or the representation was made to the Defendant [sic] with reckless indifference to its truth?

   Yes __X__        No _____

   *If your answer is "no", proceed to the next <u>section</u> at Question Number IV.1.*
   *If your answer is "yes", proceed to the next question, Question Number III.3.*

3. Do you find that [Merriman] suffered a compensable injury as a result of [AXE's] concealment of material defects or conditions at the property?

   Yes _____        No __X__

   *If your answer is "no", proceed to the next <u>section</u> at Question Number IV.1.*
   *If your answer is "yes", proceed to the next question, Question Number III.4.*

13

4. What amount would fairly compensate [Merriman]?

   $ __0.00__

5. What amount of punitive damages do you award?

   $ __0.00__

   *Please proceed to the next section at Question IV.1.*

## IV. Count IV: Negligent Misrepresentation

1. Do you find that [AXE] owed a duty to [Merriman] to accurately disclose its knowledge of the conditions of the property?

   Yes __X__    No _____

   *If your answer is "no", proceed to the next section at Question Number V.1.*
   *If your answer is "yes", proceed to the next question, Question Number IV.2.*

2. Do you find that [AXE] breached its duty in failing to disclose accurately the conditions of the property?

   Yes __X__    No _____

3. Do you find that [Merriman] suffered damage proximately caused by [AXE's] failure to disclose accurately the conditions of the property?

   Yes __X__    No _____

   *If your answer is "no", proceed to the next section at Question Number V.1.*
   *If your answer is "yes", proceed to the next question, Question Number IV.6.*

4. What amount would fairly compensate [Merriman]?

   $ __130,000__

   *Please proceed to the next section at Question V.1.*

Under Count VI, for unjust enrichment, the jury awarded Merriman an additional

14

$200,000.[10, 11]

**Motions for JNOV**

On November 29, AXE filed the first of two motions for JNOV under Maryland Rule 2-532. AXE asserted that Merriman's claims for breach of contract and unjust enrichment could not "coexist to provide [Merriman] additional relief" because, under Maryland law, "a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties" and, in the instant case, "the parties had an express contract[.]" (Quotation omitted). AXE also stated that Merriman failed to meet his burden of proof to establish damages under his claims for breach of contract or negligent misrepresentation because the evidence presented at trial was unduly speculative, and "based on guesswork [and] assumption." (Citation omitted). According to AXE, the $70,000 award for breach of contract was "speculative and not grounded in any losses that actually resulted from the breach[,]" and the $130,000 award for negligent misrepresentation was "likewise speculative and not grounded in any

---

[10] The jury did not find, under Count V for unfair or deceptive trade practices, that AXE had "made a false or misleading oral or written statement or other representation of any kind about the property" to Merriman in violation of the Maryland Consumer Protection Act.

[11] On November 16, 2021, the clerk of the Circuit Court for Prince George's County entered judgment in favor of Merriman in the amount of $200,000. The docket sheet also reflects that, by order entered on the same date, the court "ORDERED AND ADJUDGED that: Judgment is entered in favor of [Merriman] in the amount of" $200,000. However, the docket sheet also records, on November 16, a "Judgment for [Merriman] Amended Judgment Entered against [AXE], in the principal amount of" $400,000. To correct this apparent discrepancy, Merriman filed a motion to conform the judgment to the jury's verdict on December 3. The court granted the motion by order entered January 14, 2022, and amended judgment in favor of Merriman in the amount of $400,000.

recognized theories of damages of a negligent misrepresentation claim." (Quotation omitted).[12]

Merriman filed an opposition to the motion on December 14, in which he asserted AXE had waived the objections raised by its motion by failing to raise them earlier, as AXE could have "sought jury instructions that clarified the issues" or objected "[a]fter the verdict was rendered[.]" Addressing the merits of AXE's arguments, Merriman pressed that sufficient proof of his damages was introduced by Driscoll's expert testimony and the evidence of sums that had been paid to PG Builders. Citing *County Commissioners of Caroline County v. J. Ronald Dashiell & Sons, Inc.*, 358 Md. 83 (2000), Merriman also claimed that a plaintiff may simultaneously recover under claims of breach of contract and unjust enrichment where there is evidence of fraud.

On January 24, 2022, after the court entered a modified judgment to conform the judgment to the jury's verdict in the amount of $400,000, discussed *supra*, n. 11, AXE filed a renewed motion for JNOV. As in its earlier motion, AXE asserted that Merriman failed to meet his burden of proof on the issue of damages. AXE also reiterated its position that Maryland law "does not provide an unjust enrichment remedy for a breach of contract claim" and, responding to Merriman's earlier brief, AXE claimed that *Dashiell*'s "fraud exception" is not available where an express contract fully addresses a subject matter. (Citation omitted). According to AXE, the circuit court should "[r]educe the judgment" and, "[a]t most, . . . award [Merriman] $126,500.00 based on Mr. Driscoll's speculative

---

[12] The initial motion for JNOV asserted that the awards for breach of contract and negligent misrepresentation "must be reduced to $6,425.00 as a matter of law."

estimate of damages."

In May 2022, the circuit court held a hearing on the outstanding motions in the case, including AXE's motions for JNOV, and a motion for attorneys' fees that had been filed by Merriman. The motions judge took the matter under advisement. By order entered on October 26, the judge denied the initial and renewed motions for JNOV.[13] In a memorandum opinion, the judge explained that Merriman's proof of damages under his breach of contract claim was not unduly speculative, stating that:

> Mr. Driscoll, the expert witness offered by [Merriman], stated his estimate of the damages in the amount of $126,500.00 was based on his thirty-two years of experience. Mr. Driscoll stated he did not rely on contractors' bids but on the imputation of numbers for the different component pieces of the house that need to be repaired. Additionally, the jury had knowledge that [Merriman] purchased the home . . . for $255,000.00 and had already paid $6,425.00 for the repair of some defects. . . . The [circuit court] finds the estimate for repair of the home may be based on observation, knowledge, and substantial experience in the field, and the [circuit court] believes the jury found the same based on their award of damages.

The judge did not expressly address AXE's related argument that the proof of damages under Merriman's claim for negligent misrepresentation was, likewise, unduly speculative; nor did the judge address whether the circumstances merited a reduction of the award. Turning to AXE's theory that Merriman could not simultaneously recover under his breach of contract and unjust enrichment claims, the court stated that:

> Both parties rely on *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 101 (2000) in their motions. In this case the Court specifically held, "[G]enerally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." The Court

---

[13] By the same order, the court granted Merriman's motion for attorneys' fees in the amount of $67,162.48.

also stated, "[Generally], courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith[.]"[] *Id.* at 100.

[AXE] conceded there is a fraud exception for asserting an unjust enrichment claim. [Merriman] alleged [AXE] defrauded and misrepresented the property in this matter and based on the jury's award of $200,000.00 for unjust enrichment, the jury agreed that [AXE] was unjustly enrichment [sic] by [Merriman's] purchase of the property. Based on the jury's verdict, the [c]ourt can infer the jury agreed [AXE] misrepresented and defrauded [Merriman]. Therefore, the [c]ourt does not find it appropriate to vacate the jury's award for unjust enrichment and [AXE's] Motion pursuant to Maryland Rule 2-532 (e) is denied.

(First and second alterations in original). AXE filed a timely appeal to this Court on November 18, 2022.

## DISCUSSION

## I.

### Whether Recovery Under an Express Contract Bars Concurrent Recovery for Unjust Enrichment

#### a. Parties' Contentions

AXE asserts that the trial court erred in denying its initial and renewed motions for JNOV—thereby sustaining Merriman's recovery on both his breach of contract and unjust enrichment claims. AXE explains that "a plaintiff is entitled to but one compensation for her loss[,]" that this rule is intended to "prevent double recovery" and that "[u]nder the Maryland rules, [d]ifferent legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims.'" (Quoting *Beall v. Holloway-Johnson*, 446 Md. 48, 70-71 (2016) (third alteration supplied by *Beall*) (quotation omitted)). AXE acknowledges that, under *Dashiell*, a plaintiff may assert claims for both breach of contract

18

and unjust enrichment if there is "evidence of fraud or bad faith[.]" *Dashiell*, 358 Md. at 100 (footnote omitted). However, AXE stresses that "while the fraud/bad faith exception permits a plaintiff *to assert or allege* breach of contract and unjust enrichment damages, it does not permit a plaintiff *to recover both* breach of contract and unjust enrichment damages." In this case, AXE states that because "the trial court and the jury found that an express and enforceable contract existed" concerning the sale of the property, Merriman "could not recover on a claim for unjust enrichment[.]" (Citation omitted).

Merriman counters that this issue is not preserved for appellate review because AXE failed to raise it in its motion for judgment at the close of all the evidence, as required by Maryland Rule 2-532(a). If we find that the issue is preserved, Merriman says we must reject AXE's incorrect interpretation of *Dashiell*, which he claims instructs that a plaintiff may *recover* on claims for breach of contract and unjust enrichment if there is evidence of fraud or bad faith. The purpose of awarding damages under a claim for unjust enrichment, Merriman states, is "distinct" from "awarding damages under contract[,]" because unjust enrichment "force[s] the defendant to disgorge benefits[.]" (Citation omitted). Merriman acknowledges that, to-date, our appellate courts have not found occasion to uphold an award for both breach of contract and unjust enrichment under circumstances that would fall within the fraud or bad faith exception of *Dashiell*. He points out, however, that the question has never been squarely addressed by our appellate courts because, for example, in past cases "there was insufficient evidence to suggest that fraud or bad faith was at issue when forming" the contracts at issue. (Construing *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Rests., Inc.*, 243 Md. App. 62, 72 (2019)). By contrast, in this case, dual awards

19

for breach of contract and unjust enrichment are proper, Merriman asserts, because the amended complaint alleged fraud in the formation of the residential sales contract, and because the jury "expressly found that AXE Properties had engaged in both fraudulent inducement/deceit (Count II) and fraud/concealment (Count III)." (Citation omitted).

## b. Preservation and Procedure

We first consider whether AXE closed the door to our consideration of its first issue by failing to raise it properly before the circuit court, as we normally do not address issues that are not preserved. Md. Rule 8-131(a). Specifically, we address Merriman's allegation that AXE failed to raise any issue concerning concurrent awards for unjust enrichment and breach of contract in its motion for judgment at the close of all the evidence, as required by Maryland Rule 2-532(a). That inquiry necessarily requires that we consider whether AXE's motion for JNOV was the appropriate vehicle by which to bring the inconsistent verdicts before the court post trial. We conclude that the issue was preserved, and, although the better practice would have been to file motions to alter or amend and to revise under Rules 2-534 and 2-535, the JNOVs operated to bring the inconsistent verdicts before the court for resolution. We explain.

We agree that *if* AXE failed to raise the issue in its motion for judgment, it would be barred under Maryland Rule 2-532(a) from raising the issue in its motions for JNOV. This is clear from the Maryland Supreme Court's exposition in *Sage Title Group, LLC v. Roman*, that:

> Md. Rule 2-532(a) states that "a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of

20

the earlier motions." . . . When moving for judgment, pursuant to Md. Rule 2-519(a), a party "shall state with particularity all reasons why the motion should be granted." As we have explained,

> [T]he sufficiency of the particularity of the reasons for a Rule 2-519(a) motion is determined in light of legal arguments that have been made in the court of the action, with particular emphasis on whether the trial judge could identify, through a process analogous to incorporation by reference, the argument that was being made in support of the motion.

455 Md. 188, 210 (2017) (quoting *Nelson v. Carroll*, 350 Md. 247, 250 (1998)).

At the close of Merriman's case-in-chief, AXE moved for judgment under Maryland Rule 2-519 and argued, among other things, that:

> [W]ith regard to re[scission] and unjust enrichment rescission and alternative remedy, plaintiff is obviously now seeking for money damages rather than rescission. So, you know, unfortunately I don't think they could have both. You know, one is, "we're seeking damages." That's—on top of that, "we're seeking re[s]cission with respect to unjust enrichment[.]" *There is a written contract. So unjust enrichment is improper.*

(Emphasis added). The trial court denied the motion, and AXE proceeded to present evidence in its defense, therefore withdrawing the initial motion for judgment. Md. Rule 2-519(c). At the conclusion of all the evidence, AXE's counsel made a new motion for judgment, beginning as follows:

> [AXE'S COUNSEL]: Your Honor, *we would like to renew our motion for directed judgment again* and also add an additional argument that—may I argue now?
>
> THE COURT: Go ahead.

Having renewed the earlier motion, AXE's counsel proceeded to advance the "additional argument" that Merriman's proof of damages was "way too speculative."

We must resolve whether AXE's motion for judgment at the conclusion of all the

21

evidence—where AXE merely "renew[ed]" its earlier motion for judgment—"state[d] with particularity" the argument that Merriman could not recover under both breach of contract and unjust enrichment. Our decisional law clarifies that, in a civil proceeding, Maryland Rule 2-519(a)'s particularity requirement is satisfied where a party 'renews' a previous motion for judgment so long as "the trial judge 'could identify, through a process analogous to incorporation by reference, the argument that was being made in support of the motion.'" *Sage Title*, 455 Md. at 210 (quoting *Nelson*, 350 Md. at 250).

For guidance on the particularity requirement, we turn to a case that interprets the criminal analogue to Maryland Rule 2-519, namely, Maryland Rule 4-324.[14] *Warfield v.*

---

[14] Maryland Rule 4-324 provides:

**(a) Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. *The defendant shall state with particularity all reasons why the motion should be granted.* No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.
**(b) Action by the Court.** If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.
**(c) Effect of Denial.** A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion.

Md. Rule 4-324 (italicized emphasis added).

*State*, 315 Md. 474, 488 (1989) (stating Maryland Rule 4-324's "command" that a criminal

defendant "state with particularity his reasons for a motion for judgment of acquittal" was

"added to make the criminal rule consistent with its civil counterpart, Rule 2-519(a)"); *Slick*

*v. Reinecker*, 154 Md. App. 312, 349 (2003) ("Rule 2-519 . . . is to be construed consistently

with Rule 4-324, its precise counterpart in criminal cases." (citations omitted)).

In *Warfield*, the Supreme Court of Maryland considered whether a defendant

satisfied Maryland Rule 4-324(a)'s particularity requirement where defense counsel

provided detailed argument in making a motion for judgment of acquittal at the close of

the evidence offered by the State but, when later renewing the motion at the close of all the

evidence, counsel merely stated that "I would renew-renew [sic] my Motion for Acquittal

on all three Counts." 315 Md. at 486-87. The Court stated that, "*standing alone*,

Warfield's second motion for judgment of acquittal was insufficiently particularized." *Id.*

at 485 (citations omitted). However, the Court disagreed with our determination that the

renewed motion failed to preserve issues for appellate review, *id.* at 485-90, and held that

the second motion for judgment of acquittal need not stand alone. *Id.* at 487. The Court

explained:

> The specific purpose of the mandate of the rule to particularize the reasons
> for the motion is to enable the trial judge to be aware of the precise basis for
> the defendant's belief that the evidence is insufficient. Then the judge in
> determining the motion may fully appreciate the position of the defendant.
> All in all the command to particularize the reasons operates to the benefit of
> the defendant and also acts as an aid to the trial judge.
>
> When a defendant offers evidence on his own behalf after his motion for
> acquittal is denied, the motion is withdrawn . . . . But the reasons given for
> the motion are . . . not erased. To strike them from the record so as to
> preclude their consideration with respect to the second motion is against

sound reason, common sense, and the legislative intent. . . .

When a party makes anew a motion for judgment at the conclusion of all the evidence and states that the motion is based upon the same reasons given at the time the original motion was made, or when a party "renews" a motion for judgment and thereby implicitly incorporates by reference the reasons previously given, the reasons supporting the motion are before the trial judge. If[] . . . the judge desires that the reasons be restated, the judge may simply say so . . . . If the judge does not wish the reasons restated, he or she may proceed to decide the motion on the grounds previously advanced. Obviously, when the moving party wishes to advance new or different reasons . . . that party may do so, but should be careful to state whether the[se] reasons . . . are in lieu of or in addition to th[ose] . . . previously given.

We caution, however, that it would be far better for the defendant to place on the record that his reasons are the same as previously stated, and set out such further reasons he may have, but we do not think the intent of the rule is that he must be denied a review of the evidence for failure to do so. There is a sharp distinction . . . between cases in which reasons have not been particularized on either motion, and cases in which adequate reasons were given to support the first motion but not expressly set out for the second motion. In short, the withdrawal of a motion by the offering of evidence by the defendant does not kill it. It may be resurrected by renewing it, and the renewal will usually incorporate the reasons previously given. Here, the evidence offered on behalf of Warfield did not render the reasons previously advanced inappropriate. They were sufficient "to allow the trial court the opportunity to consider fully the basis for the motion." [Citation omitted].

*Id.* at 487-88. Accordingly, the Court "h[eld] that the propriety of the denial of Warfield's motion for judgment of acquittal made at the close of all the evidence is properly before us for review." *Id.* at 490.

Here, the propriety of the denial of AXE's motions for JNOV is properly before us because the issue raised by AXE on appeal was also raised in its motion for judgment at the close of all the evidence. Md. Rule 2-532(a). We note that AXE's initial motion was made on the same day as the renewed motion. The transcript reveals that the trial court specifically referred to the "issues that were argued . . . after Plaintiff's case" and

24

determined that "there has been some evidence generated to the extent that a jury . . . could find that there was some fraud[.]" Clearly, therefore, the court reconsidered AXE's arguments against dual recovery for breach of contract and unjust enrichment, and denied the motion on the ground that the jury could find there was fraud. As stated by the *Warfield* Court, "[i]f, for any reason, the judge desire[d] that the reasons be restated, the judge may [have] simply sa[id] so[.]" *Warfield*, 315 Md. at 488.

Our analysis does not end here, however, because Merriman's preservation challenge exposes another procedural issue; namely, whether AXE's motion for JNOV was the appropriate vehicle by which to bring the inconsistent verdicts before the court post trial. We observe that, normally, a motion for JNOV would not be the proper motion to file after the entry of inconsistent breach of contract and unjust enrichment judgments, given that the motion may only be made upon the grounds advanced in support of the earlier motion for judgment, and under the doctrine of election of remedies, plaintiffs are generally not required to 'elect' which of two inconsistent or alternative remedies[15] they

---

[15] Our holding in this case establishes that Merriman cannot recover damages for both breach of contract and unjust enrichment for any claims covered by the contract. The treatise, AMERICAN JURISPRUDENCE, explains how such claims constitute inconsistent remedies:

> For inconsistency to act as a bar, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically follow one without renouncing the other. To determine whether remedies are inconsistent, the court looks at whether one theory alleges what the other denies or whether one theory is repugnant to the other. Such inconsistency exists where . . . *one remedy is founded upon the*

[Footnote Continued]

25

will recover under until *after* the jury returns its verdict(s). *See e.g.*, *Hauswald Bakery v. Pantry Pride Enters., Inc.*, 78 Md. App. 495, 506 (1989) ("If the trier of fact declares for the plaintiff on both [inconsistent remedies] . . . the plaintiff will then have to make his [or her] election so that a judgment can be entered on one claim or the other, but not both." (footnote omitted)).[16] Accordingly, we do not assign error to the trial court's denial of AXE's motion for judgment at the close of the evidence.

Nonetheless, we have established that AXE preserved the issue by advancing it in the motion for judgment at the close of the evidence and the post-trial motions for JNOV. Even though a motion for JNOV is not *typically* the appropriate motion to address election of remedies, both motions for JNOV were sufficient to invoke the revisory power of the

---

> *affirmance of a contract . . . or a voidable transaction, and the other rests upon its disaffirmance or recission.*

25 Am. Jur. 2d *Election of Remedies* § 13, Westlaw (database updated Feb. 2024) (emphasis added). *See also Hauswald Bakery*, 78 Md. App. at 501-06 (claims for breach of contract and breach of an executory accord constituted inconsistent claims within the ambit of the doctrine of election of remedies).

[16] *See also Widgeon v. Eastern Shore Hosp. Ctr.*, 300 Md. 520, 535 (1984) ("It is a well-settled rule . . . that where a particular set of facts gives rise to alternative causes of action, they may be brought together in one declaration, and where several remedies are requested, an election is not required prior to final judgment." (citations omitted)); *Surratts Assocs. v. Prince George's Cnty.*, 286 Md. 555, 568 (1979) (stating that a "final judgment" is one of the "necessary elements" to trigger application of the doctrine of election of remedies); *Alexandria Nat'l Bank*, 263 Md. at 150 ("The decisions of this [C]ourt have recognized th[e] modern trend . . . that an irrevocable election [of remedies] is not made until after a final valid judgment. The mere initiation of a suit, prior to its becoming a final valid judgment, does not constitute an election which would bar either an amended claim from being filed in the same action or a totally different remedy in an independent action." (citations omitted)); 25 Am. Jur. 2D *Election of Remedies* § 13, Westlaw (database updated Feb. 2024) ("Generally, a party must make an election of remedies after the verdict is entered and prior to the entry of judgment." (footnote omitted)).

court under Maryland Rule 2-535. *See S. Mgmt. Corp. v. Taha*, 378 Md. 461 (2003);

*Allstate Ins. Co. v. Miller*, 315 Md. 182 (1989).[17] Thus, the issue of whether Merriman

---

[17] In *Allstate Insurance Co.*, a motion for JNOV was filed by Allstate Insurance Company ("Allstate") that "sought a reduction of the judgment" on the grounds that the jury had returned a verdict that exceeded Allstate's uninsured motorist coverage. *Allstate Ins. Co.*, 315 Md. at 189. The Supreme Court of Maryland noted that "a motion for judgment notwithstanding the verdict d[id] not lie because Allstate had not moved for a judgment at the close of all of the evidence on the issue that Allstate had no liability for any amount in excess of the limits of uninsured motorist coverage." *Id.* (citation omitted). Nonetheless, the Court held that "Allstate's motion . . . was sufficient to invoke the court's revisory power under Md. Rule 2-535(a)" and, "[b]ecause judgment . . . exceeding the $50,000 limit . . . was erroneous as a matter of law, the circuit court erred in failing to revise the judgment." *Id.*

In a later case, *Southern Management Corp.*, the Supreme Court of Maryland "held that a trial court erred in failing to set aside 'irreconcilably inconsistent jury verdicts' in a civil case" where "the jury found that a defendant employer was liable under the doctrine of respondeat superior, yet found that the defendant employees were not liable for the 'conduct [that] was alleged to be the sole basis of the claim for liability.'" *Givens v. State*, 449 Md. 443, 451 (2016) (alteration in original) (construing and quoting *S. Mgmt. Corp.*, 378 Md. at 486, 495). The defendant employer raised this issue in its motion for JNOV under Maryland Rule 2-532, but because the employer had "not raised the issue in its motion for judgment, [the employer] should not have relied upon Rule 2-532 as the basis for its post-judgment motion." *S. Mgmt. Corp.*, 378 Md. at 493. Nonetheless, citing to *Allstate Insurance Co.*, *supra*, the Court stated that "a timely motion for judgment notwithstanding the verdict, which seeks revision of a final judgment, may 'invoke the court's revisory power under Md. Rule 2-535(a).'" *Id.* (footnote omitted) (quoting *Allstate Ins. Co.*, 315 Md. at 189). Under the facts of the case, the Court held that "[a]lthough a motion for [JNOV] was not the proper instrument for challenging the jury verdicts, the motion nevertheless operated to invoke the court's revisory power under Maryland Rule 2-535(a)[,]" and the circuit court had "erred as a matter of law" by "failing to exercise its broad discretion [and] allow[ing] the judgments to stand, even though those judgments reflected irreconcilably inconsistent jury verdicts." *Id.* at 494-95.

Unlike *Allstate Insurance Co.* and *Southern Management Corp.*, in this case AXE *did* raise the issue of double recovery (as between Merriman's breach of contract and unjust enrichment claims) in its motion for judgment at the close of the evidence, and not only in the motions for JNOV. But even if AXE had failed to do this—or if a motion for JNOV were the improper vehicle to raise an election of remedies issue—the motions for JNOV clearly "sought a revision of the judgment and w[ere] sufficient to invoke the court's revisory power under Md. Rule 2-535(a)." *Allstate Ins. Co.*, 315 Md. at 189 (footnote omitted).

may doubly recover under his claims for breach of contract and unjust enrichment is properly before this Court.

### c. The Fraud or Bad Faith Exception

Whether, in ruling on Appellant's motions for JNOV, the circuit court properly found that Merriman may simultaneously recover under claims for breach of contract and unjust enrichment "when there is evidence of fraud or bad faith[,]" *Dashiell*, 358 Md. at 100 (footnote omitted), is a matter of first impression in Maryland and a legal question that we review without deference to the trial court. *Blue Ink, Ltd. v. Two Farms, Inc.*, 218 Md. App. 77, 91 (2014). In *Dashiell*, the Supreme Court of Maryland stated the general rule that "a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Dashiell*, 358 Md. at 96 (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)). This intuitive principle, which the Court recognized is settled law both in Maryland and elsewhere, reflects that "[u]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff *when an enforceable contract does not exist* but fairness dictates that the plaintiff receive compensation for services provided." *Id.* at 96-97 (emphasis added) (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)). The Court, however, qualified the general rule, stating:

> Generally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of *fraud or bad faith*, there has been a breach of contract or a mutual re[s]cission of the contract, when re[s]cission is warranted, or when the express contract does not fully address a subject matter.

*Id.* at 100 (emphasis added) (footnotes omitted); *see also AAC HP Realty, LLC v. Bubba*

28

*Gump Shrimp Co. Rests., Inc.*, 243 Md. App. 62, 72 & n.6 (2019) (describing the *Dashiell* exceptions as "narrow" (quoting *Cunney v. Patrick Commc'ns, LLC*, 191 F. Supp. 3d 480, 503 (D. Md. 2016)). Because the Court in *Dashiell* found that none of the recognized exceptions applied, the Court did not provide additional guidance as to the application of the fraud or bad faith exceptions "that have been recognized elsewhere[.]" *See Dashiell*, 358 Md. at 100. Instead, in its holding, the Court re-stated the basic principle that: "generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *Id.* at 101.

Indeed, as we recognized in *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants, Inc.*, "[n]o reported decision applying Maryland law has ever upheld a judgment based on any of the[] exceptions" set forth by *Dashiell*. 243 Md. App. 62, 72 (2019). Nor have we identified any decision applying Maryland law, reported or otherwise, that squarely addresses the question of whether a plaintiff can *recover under*, as opposed to merely *bring*, separate claims for breach of contract and unjust enrichment if one of the *Dashiell* exceptions applies.[18]

---

[18] We note that, in *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, the United States District Court for the District of Maryland stated that: "[A]lthough a plaintiff 'may not recover under both contract and quasi-contract theories, [a plaintiff] is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute.'" 113 F. Supp. 3d 807, 822 (D. Md. 2015) (alteration in original) (quoting *Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002)). This statement would appear to address the issue presented in the instant case and, indeed, both the *Chevron* and *Swedish Civil Aviation*

[Footnote Continued]

For example, in *AAC HP Realty*, the restaurant chain Bubba Gump Shrimp Co. Restaurants, Inc. ("Bubba Gump"), which maintained a restaurant in Harborplace in Baltimore City, sued its landlord, AAC HP Realty, LLC ("AAC"), for, among other things, breach of contract and unjust enrichment after AAC failed to maintain and police certain common areas as required by the lease. *See AAC HP Realty*, 243 Md. App. at 65-67. Following a bench trial, the circuit court determined that AAC breached its contractual obligations to maintain and police the common areas and that, as a result, Bubba Gump was entitled to receive attorneys' fees and out-of-pocket security costs; however, the court found that Bubba Gump could not recover lost profits under its breach of contract claim because Bubba Gump failed to prove lost profits with reasonable certainty. *Id.* at 67. Nonetheless, relying on *Dashiell*, the court awarded Bubba Gump more than a million dollars under its unjust enrichment claim, which the court described as an "equitable rent reduction[.]"[19] *Id.* at 67-68. On appeal to this Court, we recognized that *Dashiell* "listed

---

*Administration* courts cited to *Dashiell* in their discussions. *See Chevron*, 113 F. Supp. 3d at 822; *Swedish Civ. Aviation Admin.*, 190 F. Supp. 2d at 792. However, in stating that a plaintiff may bring, but not recover, under both quasi-contract and contract theories, the *Swedish Civil Aviation Administration* court did not rely on *Dashiell*; rather, the court relied on the Federal Rules of Civil Procedure, which, at that time, stated "in pertinent part, '[a] party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal [or] equitable . . . grounds." *Swedish Civ. Aviation Admin.*, 190 F. Supp. at 792 (quoting FED. R. CIV. P. 8(e)(2) (2002)). Today, the Rule states: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FED. R. CIV. P. 8(d)(2).

[19] The lease between Bubba Gump and AAC permitted AAC to utilize any portion of Bubba Gump's monthly rental payments to pay for various "Operating Expenses,"

[Footnote Continued]

four potential exceptions to the prevailing rule barring unjust enrichment when an enforceable contract exists[,]" but that no reported case had relied on a *Dashiell* exception to uphold a judgment. *Id.* at 72. We reversed the judgment of the circuit court to the extent that damages were awarded for unjust enrichment, *id.* at 75, and explained that:

> The circuit court erred in relying on the exception for bad faith. For this exception to apply, Bubba Gump needed evidence of bad faith or fraud in the formation of the contract, as opposed to the performance of the contract. . . .
>
> The circuit court also erred in relying on the exception for express contracts that do not fully address the relevant subject matter. . . . In short, the lease covers the same subject matter as the unjust enrichment claim that Bubba Gump purported to assert; therefore, no quasi-contractual claim could arise.

*Id.* at 72-73 (citations omitted).[20]

To help discern the scope of the fraud or bad faith exception, therefore, we turn to cases applying Ohio law because, in *Dashiell*, the Court cited just one federal case—which applied Ohio law—to support the proposition that courts may "allow unjust enrichment claims . . . when there is evidence of fraud or bad faith[.]" *Dashiell*, 358 Md. at 100 & n.9 (citing *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n* (hereinafter "*Wildner*"), 913 F. Supp. 1031 (N.D. Ohio 1996)).

In *Wildner*, the United States District Court for the Northern District of Ohio

---

including expenses related to the maintenance and policing of the common areas. *AAC HP Realty*, 243 Md. App. at 66. The award that the circuit court fashioned under Bubba Gump's claim for unjust enrichment was intended to reimburse Bubba Gump for the "portion of [its] rent payment[s] that Bubba Gump attributed to its obligation to pay the Operating Expenses" through its monthly rental payments. *Id.* at 67-68.

[20] *See also Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014) ("[A] contract exists . . . that covers the same subject matter as the unjust enrichment claim. Plaintiffs argue that they can plead in the alternative. . . . [But] nowhere in the complaint do Plaintiffs actually allege bad faith in the formation of the [contract.]").

considered whether, under Ohio law, Wildner's claim for unjust enrichment against the Ohio Turnpike Commission must be dismissed where it was "undisputed" that the parties "had an express contract pertaining to the same subject[.]" *Wildner*, 913 F. Supp. at 1043. The court recognized that, "in the absence of fraud or bad faith, Ohio law prohibits recovery under a theory of unjust enrichment where an express contract covers the same subject." *Id.* at 1043 (citing *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) and *Ullmann v. May*, 72 N.E.2d 63, Syll. at ¶ 4 (Ohio 1947)). Because the court found that the "claim for unjust enrichment [was] not outside the parameters of the contract[,]" the unjust enrichment claim could survive the motion to dismiss only if Wildner "allege[d] fraud or bad faith in the complaint[.]" *Id.* at 1043. In reviewing the amended complaint, the court found that Wildner did in fact "allege . . . bad faith in the formation of the contract" and, therefore, the "amended complaint . . . states a cause of action for unjust enrichment and [the Commission's] motion to dismiss is denied as to" that count. *Id.* at 1043.

As in *Dashiell*, the *Wildner* opinion does not directly address whether a party can *recover* under both claims for breach of contract and unjust enrichment where the fraud or bad faith exception applies. *See id.* Fortunately, the *Ullmann* case cited by the *Wildner* court sheds additional light.[21]

---

[21] Apart from the *Ullman* case itself, each of the cases that the *Wildner* court cites in its discussion of the fraud or bad faith exception, in turn, cite to *Ullman*, in their respective discussions of the fraud or bad faith exception. *See Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975); *Eyerman v. Mary Kay Cosmetics,*

[Footnote Continued]

In *Ullmann*, the plaintiff's third amended petition included "three causes of action, the first and second causes being on a contract and the third cause being upon the quantum meruit." 72 N.E.2d at 64[22] (synopsis).[23] The pertinent facts were as follows: The contract of employment between employee/plaintiff Ullmann, a salesman, and employer/defendant the May Company, stated, in pertinent part, that either party could terminate the contract, but only "upon giving to the other party not less than seven days' written notice of the intention to cancel this agreement." *Id.* at 67. The contract also provided that certain commissions would be paid to Ullmann, but "only during the time this agreement remains in full force and effect." *Id.* at 67. The May Company terminated the contract without providing Ullmann the requisite seven-day notice; however, it eventually conceded, in a letter, that Ullman was entitled to commissions that accrued within a week of the termination. *Id.* at 65-66 (synopsis).

Despite that concession and the contract's plain language, Ullman brought suit to recover commissions on certain collections that the May Company received *after* the seven-day notice period. *See id.* at 67. The Court quoted each of Ullmann's arguments

*Inc.*, 967 F.2d 213, 222 (6th Cir. 1992); *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989)). Indeed, we conclude that, at least under Ohio law, the fraud or bad faith exception was first presented by the *Ullman* Court.

[22] The page numbering of the North Eastern Reporter does not exactly match that demarcated by the commercial publisher Westlaw in its reproduction of the opinion. The citations in this opinion are to the page numbers as they appear in the physical Reporter.

[23] Ordinarily, we would not cite to the synopsis of an opinion. In *Ullman*, however, much of the background information pertinent to the case is described only in the synopsis, and not repeated in the body of the opinion, which instead focuses on the applicable law and analysis thereof.

and explained why each argument failed as follows:

> [Ullman] claims: "That the commissions were payable absolutely." [The Court is] of the opinion that the commissions were payable conditionally and that such condition was not fulfilled.
>
> [Ullman] claims: "That the discharge was in bad faith and wrongful." There is no proof to support this claim.
>
> [Ullman] claims: "That under quantum meruit and unjust enrichment theories plaintiff was entitled to recovery." Neither of these theories applies for the reason that there is an express contract which has not been breached, and no fraud or bad faith necessary to support the theory of unjust enrichment has been shown.

*Id.* at 67. Adhering to standard principles of contract law, the Court was unwilling to aid Ullmann's attempt to avoid the contract's limitation on post-termination commissions because "courts do not relieve competent parties from an improvident agreement." *Id.* at 67. Turning to Ullmann's unjust enrichment theory, the Court stated:

> We are of the opinion that the rule here applicable is succinctly set out in the Restatement of the Law of Restitution, Chapter 4, page 447, Section 107, as follows:
>
>> "(1) A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, **unless the transaction is *rescinded for fraud*, mistake, duress, undue influence or illegality**, or unless the other has failed to perform his part of the bargain."
>
> Under Comment on page 448, *ibid*, it is said: "* * * A person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return."

*Ullman*, 72 N.E. 2d at 68 (emphasis added). While Ullmann alleged bad faith and fraud in his petition, the Court could not "deduce fraud or bad faith" from the joint stipulation of

34

facts that the "case was tried upon[.]" *Id.* at 68. Accordingly, Ullmann could not recover, under a theory of unjust enrichment, purported commissions arising after the effective termination of the contract. *See id.* at 68-69. *See also Hogan v. Wright*, 356 F.2d 595, 598 (6th Cir. 1966) (citing favorably to *Ullmann* and Section 107 of the RESTATEMENT (FIRST) OF RESTITUTION (1937)).

By the plain text of Section 107 of the RESTATEMENT (FIRST) OF RESTITUTION, a plaintiff may obtain a recovery "other than in accordance with the terms" of a contract under a theory of unjust enrichment if the contract is "*rescinded* for fraud, mistake, duress, undue influence or illegality[.]" RESTATEMENT (FIRST) OF RESTITUTION § 107 (emphasis added). Patently, a party may not rescind a contract to recover under a theory of unjust enrichment while simultaneously enforcing that same contract in order to recover damages (and attorneys' fees). Because in *Dashiell* the Maryland Supreme Court relied on *Wildner*, and because *Wildner* (and related cases applying Ohio law) in turn rely on *Ullmann*, we find the *Ullmann* Court's reasoning persuasive to our analysis, and we conclude that the principle stated by Section 107 of the RESTATEMENT (FIRST) OF RESTITUTION governs the case at bar.

Following the *Ullmann* decision, we have not identified a reported case that, applying Ohio law, squarely addresses whether a plaintiff may recover under both breach of contract and unjust enrichment claims if there is evidence of fraud or bad faith. However, unreported caselaw applying Ohio law supports our conclusion that *Ullmann* and *Dashiell*'s fraud or bad faith exception does not permit a plaintiff to doubly recover under claims for both breach of contract and unjust enrichment. *See, e.g., Harwood v. BJP*

35

*Invs. Co.*, No. 91832, 2009 WL 1362352, at *8 (Ohio Ct. App. May 14, 2009) (relying on

*Ullman* to hold that the appellees were entitled to judgment as a matter of law on the

appellant's unjust enrichment claim because the appellant "d[id] not allege a fraud[] which

might render th[e] contract *voidable*" (emphasis added; footnote omitted)).[24]

We also note that the Supreme Court of Montana, relying on a more recent version

of the Restatement, has described a substantively similar principle:

> "[A] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." Restatement (Third) of Restitution § 2(2). . . . Consequently, unjust enrichment applies in the contract context only when a party renders "a valuable performance" or confers a benefit upon another under a contract that is invalid, voidable, "or otherwise ineffective to regulate the parties' obligations." Restatement (Third) of Restitution § 2(2) cmt. c. *See also* . . . Restatement (Third) of Restitution §§ 31 and 36 (availability of unjust enrichment where governing contract is indefinite, unenforceable, or does not address aftermath of a material breach); Restatement (Second) of Contracts §§ 283 cmt. c and 373-77 (1981) (addressing various contract-related scenarios where an otherwise governing contract is rescinded,

---

[24] This Court may cite to the unreported caselaw of Ohio's appellate courts as persuasive authority. Md. Rule 1-104(b) ("An unreported or unpublished opinion, order, or other decision issued by a federal court or by a court in a jurisdiction other than Maryland may be cited as persuasive authority if the jurisdiction in which the opinion was issued would permit it to be cited as persuasive authority or as precedent. The citation shall indicate whether the opinion is precedent in the issuing jurisdiction."). As stated by Ohio's intermediate appellate court, the Ohio Court of Appeals:

> [W]hether [a] case is reported or not, it is a reflection of the views of this court. . . . [T]he Rules for the Reporting of Opinions were revised effective May 1, 2002. The revised rules abolish the designations of 'controlling' and 'persuasive' authority based upon whether a case was published in the Ohio Official Reports, . . . and provide that '[a]ll court of appeals opinions issued after the effective date of these rules may be cited as legal authority and weighted as deemed appropriate by the court,' R. Rep. Op. 4(B). While the new rule applies to cases decided after its effective date, the reasoning behind it is equally applicable to cases decided earlier.

*Premier Assocs., Ltd. v. Loper*, 778 N.E.2d 630, 637 n.2 (Ohio Ct. App. 2002).

unenforceable, or ineffective to address consequences of a material breach).

*Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595-96 (Mont. 2018). *See also*
RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 2 cmt. c (2011)
("Judicial statements to the effect that 'there can be no unjust enrichment in contract cases'
can be misleading if taken casually. Restitution claims of great practical significance arise
in a contractual context, but they occur at the margins, when a valuable performance has
been rendered under a contract that is invalid, or *subject to avoidance*, or otherwise
ineffective to regulate the parties' obligations." (emphasis added)).

Applying the precepts discussed in the foregoing caselaw and the Restatement
(First) of Restitution, we hold that while a plaintiff may *allege* causes of action for breach
of contract and unjust enrichment concurrently "when there is evidence of fraud or bad
faith," *Dashiell*, 358 Md. at 100 (footnote omitted), a plaintiff may not ultimately *recover*
under both for any claim covered under the contract.

As is evident from Merriman's arguments on appeal, he resists making an express
election between his claims for unjust enrichment and breach of contract. We determine,
under the unique circumstances of this case, that a remand is not necessary to allow
Merriman to make an election because he already made an election *not* to rescind the
contract by virtue of his post-trial conduct. As previously noted, following the trial,
Merriman filed a motion for attorneys' fees as part of his breach of contract claim. Indeed,
the circuit court ultimately granted this motion and awarded Merriman $67,162.48 in
attorneys' fees under the contract. In conclusion, we hold that the $200,000 award for
unjust enrichment was erroneous as a matter of law and that the circuit court erred in failing

to revise the judgment.

## II.

### Sufficiency of the Compensatory Damage Award

### a. Parties' Contentions

Before this Court, AXE contends that the trial court erred by denying its initial and renewed motions for JNOV because the evidence at trial could not support a combined compensatory damage award of $200,000 that included separate awards for breach of contract ($70,000) and negligent misrepresentation ($130,000). According to AXE, Merriman "only presented $132,925 in damages" at trial, comprised of Jeanine Merriman's testimony concerning $6,425 in out-of-pocket expenses, and the opinion of Merriman's expert, Driscoll, that the property needed $126,500 in additional repairs. Citing to *Beall v. Holloway-Johnson*, 446 Md. 48, 70-71 (2016), AXE asserts that Merriman's claims for breach of contract and negligent misrepresentation cannot be "considered separate claims for purposes of separate compensatory damage awards" because AXE's claimed damages did not "arise[] from separate, unique transactions[.]" (Quoting *Beall*, 465 Md. at 71). AXE maintains that Merriman's purportedly separate claims for breach of contract and negligent misrepresentation entitled him to just one compensatory recovery.[25] Therefore, by AXE's calculation, the combined $200,000 compensatory award exceeds the $132,925 in damages that may be supported by the evidence. To remedy this issue, AXE asks that

---

[25] AXE does not cite to where it presented this argument in the circuit court, but rather, at page 22 of its opening brief, refers to the circuit court's "expected knowledge of Maryland's one recovery rule."

we exercise our authority under Maryland Rule 8-604 to modify the judgment of the circuit court in order to award Merriman $132,925 as between his claims for breach of contract and negligent misrepresentation. Notably, unlike in AXE's motion for judgment at the close of the evidence, on appeal AXE does not assert that Merriman's proof of damages—namely the $126,500 that Driscoll testified was necessary to restore the property—is impermissibly speculative; rather, Appellant concedes that "[a]t trial, Merriman . . . presented $132,925 in damages" and asserts that "the trial court should have exercised [the court's] authority under Rule 2-534" in order to "enter[] judgment for $132,925 to conform to the evidence presented at trial."

Merriman does not address how, under *Beall*, he may recover separate compensatory awards for his breach of contract and negligent misrepresentation claims; nonetheless, he maintains that separate awards are appropriate. He also indicates that the evidence of damages was not limited to $132,925 because he paid $255,000 for the home, and because AXE made a profit of $50,000 when selling the home. At one point in his brief, Merriman appears to indicate that the jury could have permissibly awarded him damages as high as $387,925,[26] for each claim; this figure would represent the cost of the home, plus Merriman's payments to PG Builders and the cost that Driscoll estimated was necessary to further restore the property. To explain why the jury may have chosen to award him lesser amounts, Merriman posits that "in the politics of jury deliberations,

---

[26] Merriman's brief uses a slightly smaller figure—$387,425—because Merriman mistakenly asserts that, according to Driscoll, it would take $126,000 to restore the property, rather than $126,500.

39

conflict among the members of the jury as to liability may ultimately be resolved by means

of reduced damages." (Quoting *Butkiewicz v. State*, 127 Md. App. 412, 429 (1999)). In

any case, because the jury's damage awards for breach of contract and negligent

misrepresentation fell well below what he believes the evidence could support, Merriman

maintains that the trial court did not err in denying AXE's motions for JNOV.

### b. Statement of Law

*Right to Damages for Breach of Real Estate Contract and*
*Negligent Misrepresentation Based on Breach of Contract*

As a predicate to our examination of AXE's double recovery argument, we quickly

review the interrelationship between the damage claims at issue to verify that the damages

indeed constituted a double recovery, and to set the context for our conclusion that AXE

failed to preserve the issue for review on appeal. In Maryland, "[t]he amount of damages

recoverable for breach of contract is that which will place the injured party in the monetary

position [they] would have occupied if the contract had been properly performed." *Hall v.*

*Lovell Regency Homes Ltd. P'ship*, 121 Md. App. 1, 12 (1998) (citations omitted); *see also*

*id.* ("In a breach of contract action for defective performance of a real estate construction

contract, the primary measure of damages is the cost of repairing or remedying the defect."

(citations omitted)). As we explained in *Hall*:

> Damages for breach of contract "seek to vindicate the promisee's expectation
> interest." *Andrulis* [*v. Levin Const. Corp.*], 331 Md. [354,] 374, 628 A.2d
> 197 [(1993)]. Expectation interest damages include losses sustained, *i.e.*,
> "out of pocket damages," and gains lost, *i.e.*, "benefit of the bargain"
> damages. *Beard* [*v. S/E joint Venture*], 321 Md. [126,] 133, 581 A.2d 1275
> [(1990)].

*Id.* at 13. *See also Beard*, 321 Md. at 133 ("Damages for breach of a contract ordinarily

are that sum which would place the plaintiff in as good a position as that in which the plaintiff would have been, had the contract been performed. These expectation interest damages embrace both losses incurred and gains prevented." (citations omitted)). Where negligent misrepresentation is founded on a breach of contract in regard to the sale of property, "the rule as to [the] measure of damages is the same as in cases for breach of contract in regard to the sale of property." *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 510 (1971) (quoting *Webster v. Woolford*, 81 Md. 329, 330 (1895)). In *Goldstein v. Miles*, we detailed, at length, the measure of damages that a plaintiff may recover pursuant to a claim of negligent misrepresentation:

> In determining "the proper measure of damages in fraud and deceit cases," Maryland applies the "flexibility theory." *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 511, 278 A.2d 42 (1971). Under that theory, a victim of fraudulent or negligent misrepresentation may elect to recover either "out-of-pocket" expenses or benefit-of-the-bargain damages. The former will permit the plaintiff to recover his or her actual losses; the latter "put[s] the defrauded party in the same financial position as if the fraudulent representations had in fact been true," *Midwest Home Distrib., Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735, 739 (Iowa 1998)[.]

*Goldstein v. Miles*, 159 Md. App. 403, 422 (2004) (alteration in original).

*Methods of Ascertaining Damages*

The "out-of-pocket" test is used to calculate actual loss type damages, measured as "the difference between the amount of the purchase price the buyer has paid and the actual value of the property on the date it was sold." *Hall*, 121 Md. App. at 12 (quoting *Beardmore*, 245 Md. at 390).

By contrast, benefit-of-the-bargain type damages are typically measured by awarding the plaintiff "the difference between the actual value of the property at the time

41

of making the contract and the value that it would have possessed if the representations had been true." *Goldstein*, 159 Md. App. at 422-23 (quoting *Hall*, 121 Md. App. at 12). However, our Supreme Court has recognized that a different formula, termed the "'cost to conform' measure of damages[,]" is "a permissible alternative formula for computing damages of the 'benefit of bargain' nature which in some cases can be more efficient and direct than the broader classic formula." *Hinkle*, 262 Md. at 511 (citation omitted). Cost to conform damages are analogous to the cost to repair damages available under contract law, and are calculated by determining the amount necessary to conform property to its original represented condition. *See id.* (describing cost to conform damages); *Hall*, 121 Md. App. at 12-13 ("In a breach of contract action for defective performance of a real estate construction contract, the primary measure of damages is the cost of repairing or remedying the defect." (citations omitted)).

*Double Recovery*

In *Beall v. Holloway-Johnson*, the Supreme Court of Maryland explained that a plaintiff may not doubly recover the same damages under different legal theories that arise from the same basic facts:

> Compensatory damages are awarded in an attempt to make the plaintiff whole again by monetary compensation. We have noted that, although compensatory damages are awarded to make a plaintiff whole, they are not intended to grant to the plaintiff a windfall as a result of the defendant's tortious conduct. Thus, an award for compensatory damages must be anchored to a rational basis on which to ensure that the awards are not merely speculative.
>
> Maryland law provides that a plaintiff is entitled to but one compensation for her loss and that satisfaction of her claim prevents further action against another for the same damages. The purpose of the rule is to prevent double

42

recovery and, thus, unjust enrichment. Under the Maryland rules, different legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims.' Because it is common for a plaintiff to plead multiple claims or theories of recovery for the same incident, we clarified that what makes claims separate is *not* whether they are pled in separate counts or embody separate legal theories. Additionally, we explained:

> Where a claimant presents a number of legal theories, but will be permitted to recover on at most one of them, his possible recoveries are mutually exclusive, and he has but a single claim for relief. The existence of multiple claims ultimately depends upon whether the aggregate of the operative facts presented states more than one claim which can be separately enforced.

For a plaintiff to have his or her claims considered separate claims for purposes of separate compensatory damage awards, the injuries must have arisen from separate, unique transactions; otherwise, the multiple claims are essentially different legal theories premised on a single set of facts.

*Beall v. Holloway-Johnson*, 446 Md. 48, 70-71 (2016) (third to fifth alterations in original) (internal quotation marks and citations omitted). This principle is "sometimes called the 'one recovery rule.'" *Westfield Ins. Co. v. Gilliam*, 477 Md. 346, 355 (2022) (citations omitted).

### c.    Analysis

In this case, Merriman's separate claims for breach of contract and negligent misrepresentation concerned identical injuries that, patently, did not "arise[] from separate, unique transactions[,]" and therefore these claims—though set forth in separate *counts*— were not "separate claims for purposes of separate *compensatory damage awards*[.]"

*Beall*, 446 Md. at 71 (emphasis added).[27]

Moreover, it is abundantly clear that the combined compensatory award of $200,000 ($130,000 for negligent misrepresentation, and $70,000 for breach of contract), outstrips the $132,925 in damages that the evidence could support. While Merriman states in his brief that he sought damages under the benefit-of-the-bargain rule, he more accurately sought to recover the "cost of repairing or remedying the defect[s]" pursuant to his breach of contract claim, *Hall*, 121 Md. App. at 13 (citations omitted), and "cost to conform" damages pursuant to his claim for negligent misrepresentation, which is "a permissible alternative for computing damages of the 'benefit of the bargain' nature[.]" *Hinkle*, 262

---

[27] Unlike Merriman's claims for breach of contract and unjust enrichment, Merriman's damages claims for negligent misrepresentation and breach of contract do not constitute inconsistent remedies for the purposes of the doctrine of election of remedies, as aptly explained by the Missouri Court of Appeals:

> [A] claim for breach of contract and a claim for fraudulent misrepresentation are not inconsistent legal theories. Legal theories are inconsistent if proof of one necessarily negates, repudiates, and disproves the other. A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively. . . . [B]ecause [in Missouri] actual damages for breach of contract . . . and benefit-of-the-bargain damages for fraud are *not inconsistent remedies in that they both rest on affirmance of the contract*, the [plaintiffs] are not required to make an election of remedies. The [plaintiffs], however, are not entitled to be made more than whole or receive more than one full recovery for the same harm. Thus, if damages for breach of contract . . . and fraud are the same, then [in Missouri] the damage award merges.

*Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 669-70 (Mo. Ct. App. 2004) (emphasis added) (cleaned up).

44

Md. at 511 (citation omitted).[28]  Although different terms of art may be used to describe these damages, in reality, under the facts of this case, Merriman's negligent misrepresentation claim is founded on breach of the contract of sale of the property, and, therefore, "the rule of damages is the same as in cases for breach of contract in regard to the sale of property." *Id.* at 510 (quotation omitted).  Here, the sole pertinent evidence of Merriman's damages consisted of the sums paid to PG Builders and the amount that Driscoll testified was necessary to further restore the property, totaling $132,925.

In other words, a reasonable factfinder—in this case the jury—could have found, at *most*, that Merriman was entitled to $132,925 in compensatory damages.  Conceivably, the jury recognized this because neither award—taken *separately*—exceeds $132,925.[29]  But by entering judgment in the full amount of both verdicts, the *combined* compensatory award conferred an impermissible double recovery upon Merriman in an amount of at least $67,075—representing the difference between the $200,000 combined compensatory

---

[28] Merriman could not recover under either the out-of-pocket or benefit-of-the-bargain measures of damages because, as we explained above, both require the plaintiff to demonstrate the actual value of the property at the time it was sold.  *Hall*, 121 Md. App. at 12; *Goldstein*, 159 Md. App. at 422.  Here, there was no evidence to demonstrate that value.

[29] It is impossible to say with any certainty why the jury returned different awards under Merriman's breach of contract and negligent misrepresentation claims; however, we have recognized that "in the politics of jury deliberations, conflict among the members of the jury as to liability may ultimately be resolved by means of reduced damages." *Butkiewicz v. State*, 127 Md. App. 412, 429 (1999).  Thus, contrary to an assertion made by AXE in a footnote of its brief, the mere fact that the jury rendered differing awards does not render those awards irreconcilably inconsistent. *See generally Patras v. Syphax*, 166 Md. App. 67, 75-77 (2005) (describing irreconcilably inconsistent verdicts).

award and the maximum level of damages proved at trial.[30]  Although we have resolved

the question of double recovery, our analysis does not stop here.

Certainly by the close of all evidence, it should have been clear that Merriman's

claims for negligent misrepresentation and breach of contract—under the facts of this

case—represented different legal theories premised on a single set of facts.  *Beall*, 446 Md.

at 70-71.  Consequently, AXE could have voiced an objection following the return of the

jury's verdicts, *see Francis v. Johnson*, 219 Md. App. 531, 560-61 (2014) (speculating, in

dicta, that "[i]t could be argued that, similar to an inconsistent verdict claim, this type of

argument [pertaining to duplicative damages] is waived if not brought to the attention of

the court when the verdict is rendered").  Once judgment was entered, AXE could have

filed a timely motion to alter or amend under Maryland Rule 2-534, and a motion to invoke

the court's revisory power under Maryland Rule 2-535.  There are, in sum, several ways

by which AXE could have preserved an objection under *Beall* and the one recovery rule;

however, in this case, the record plainly shows that AXE failed to raise the issue until the

instant appeal.  *See* Md. Rule 8-131(a).[31]

Even construing AXE's motions for JNOV under Maryland Rule 2-532 as motions

---

[30] At this late stage, it is impossible to determine the degree to which the jury may have believed that the damages under Merriman's counts for breach of contract and negligent misrepresentation did, or did not, overlap.

[31] We note that, in appropriate circumstances, including when "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal[,]" we may decide an issue that was not preserved.  Md. Rule 8-131(a).  *See, e.g.*, *Francis*, 219 Md. App. at 561, 564.  However, as stated by the Rule, "[o]rdinarily, [we] will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"  Md. Rule 8-131(a).

that invoked the court's revisory power under Rule 2-535, the motions remain deficient because neither motion discussed *Beall*, the one recovery rule, or the general issue that the combined compensatory award included duplicative damages.[32]  While AXE argued that the combined compensatory award must be reduced, it did not argue that the award must be modified *for these reasons*.

We have acknowledged that, in certain circumstances, a motion for JNOV may be construed to include, in the alternative, a different type of motion, such as a motion for remittitur, under the principle that "courts are to consider motions based on their content, not on how they are titled." *Davis v. Bd. of Educ. for Prince George's Cnty.*, 222 Md. App. 246, 271 (2015).  Thus:

> Under Maryland law, when motions and other pleadings are considered by a trial judge, it is the **substance** of the pleading that governs its outcome, and not its **form**.  In other words, the nature of a motion is determined by the relief it seeks and not its label or caption.

*Id.* (quoting *Hill v. Hill*, 118 Md. App. 36, 44 (1997)).  As just mentioned, in this case AXE's initial and renewed motions for JNOV *did* ask the circuit court to *reduce* Merriman's award.  However, while "Maryland law favors treating a motion or pleading

---

[32] As previously discussed, *supra* note 17, in both *Allstate Insurance Co.* and *Southern Management Corp.*, the aggrieved defendants expressly raised—in their motions for JNOV—the issues which the Supreme Court of Maryland held should have triggered an exercise of the circuit court's revisory power.  *Allstate Ins. Co.*, 315 Md. at 189 (judgment exceeding limits of uninsured motorist coverage); *S. Mgmt. Corp.*, 378 Md. at 494 (irreconcilably inconsistent jury verdicts).  Here, by contrast, neither of AXE's motions for JNOV asserted that the combined compensatory award must be reduced because of any issues related to *Beall v. Holloway-Johnson*, 446 Md. 48 (2016), or the one recovery rule.  Therefore, we find that the instant case is distinguished from both *Allstate Insurance Co.* and *Southern Management Corp.*

in accordance with its substance, not its form[,]" *id.* at 276, the motions made no mention of a new trial and we cannot read AXE's request to the court to remit the verdict as a motion for new trial; nor did the trial court read it as such, as it did not consider granting a new trial. *Id.* Therefore, even if the *substance* of AXE's motions were construed to be, in the alternative, motions to reduce the combined compensatory award under Maryland Rule 2-534, i.e. on the theory that the damages were excessive, the motions would *still* be deficient because "a verdict only may be remitted in conjunction with a motion for new trial, when the court has decided to grant the motion on the ground that the verdict is excessive but the plaintiff chooses to accept a remittitur instead." *Id.*

Our decision in *Battista v. Savings Bank of Balt.*, 67 Md. App. 257 (1986), is instructive. In *Battista*, as an alternative reason for granting the defendant bank's motion for JNOV as to the plaintiff's conversion claim, the circuit court "found insufficient evidence of compensatory damages to warrant submission of that issue to the jury." *Id.* at 272. This Court disagreed, finding "enough [evidence] to take the issue . . . to the jury." *Id.* Nonetheless, on appeal the bank asserted that this Court should affirm the grant of the JNOV because "given the slim evidence of damages, the . . . verdict . . . was excessive." *Id.* at 273. We explained that "[t]he theory that judgment n.o.v. should be granted if there is *no* evidence of damages is, of course, sound[,]" but that:

> [T]he Bank is now precluded from arguing that the verdict was excessive. A motion for judgment n.o.v. is not the way to get at excessive damages; that is the office of a motion for a new trial which can be denied conditioned on the plaintiff's acceptance of a *remittitur*. *Cheek v. J.B.G. Properties, Inc.*, 28 Md. App. 29, 43, 344 A.2d 180 (1975) (judgment n.o.v. cannot be used to amend, reduce, or alter jury's verdict). That *Cheek* is still good law is demonstrated by [Maryland] Rule 2-532(e) which provides that when a jury

verdict has been returned, and when a motion for judgment n.o.v. is not joined with a motion for new trial, the court may deny or grant the motion for judgment. If it does the latter, it may only "set aside any judgment entered and direct the entry of a new judgment."

Here, the judge granted the motion because he saw . . . insufficient evidence of damages to go to the jury. . . . [B]ecause of the procedural posture of the case, [we] do not have before us whether the verdict was excessive in light of the evidence of damages that is in the record. We cannot use an excessive damages argument to sustain the trial judge's granting of the judgment n.o.v.

*Id.* at 273-74. While these principles do not detract from a circuit court's ability to exercise revisory power over the judgment, neither motion for JNOV—as we noted above—actually raised *Beall* or the one recovery rule.

In summary, because AXE waited until the instant appeal to complain that the combined compensatory award ran afoul of *Beall* and the one recovery rule, we hold that AXE failed to preserve this issue and we will not disturb the jury's $200,000 combined compensatory award.

## Conclusion

For the above reasons, we hold: *First*, that while *Dashiell* permits a plaintiff to *allege* causes of action for breach of contract and unjust enrichment concurrently when there is evidence of fraud or bad faith, a plaintiff may not *recover* under both for any claim covered under the contract. *Cnty. Comm'rs of Caroline Cnty. v. J. Ronald Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000). In this case, the trial court erred in denying Appellant's motions for JNOV on the ground that Merriman may simultaneously recover under claims for breach of contract and unjust enrichment for claims that were covered by the underlying contract of sale.

49

*Second*, we hold that AXE failed to preserve the argument it raises for the first time on appeal pertaining to double recovery under *Beall*, 446 Md. at 70-71.  Accordingly, we will not disturb the jury's combined compensatory award in the amount of $200,000 on the counts of negligent misrepresentation and breach of contract.

JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED IN PART AND AFFIRMED IN PART.  JUDGMENT IN THE AMOUNT OF $200,000 FOR UNJUST ENRICHMENT REVERSED.  JUDGMENTS FOR BREACH OF CONTRACT AND NEGLIGENT MISREPRESENTATION AFFIRMED.  COSTS TO BE DIVIDED EVENLY BETWEEN THE PARTIES.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1627s22cn.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1627s22cn2.pdf